1  PATRICK BALDWIN, ESQ. (SBN 93337)
2  CHRISTOPHER MADER, ESQ. (SBN 199605)
   BALDWIN MADER LAW GROUP
3  920 Manhattan Beach Boulevard, No. 2
   Manhattan Beach, CA 90266
4  Phone: (310) 545-0620
   E-mail: cmader@baldwinlawgroup.com
5  *Attorneys for Plaintiffs Rolloco Holdings, Inc., Cathy Rollo and Tony Rollo*

6

7

8              **UNITED STATES DISTRICT COURT**

9            **CENTRAL DISTRICT OF CALIFORNIA**

10                  **EASTERN DIVISION**

11

12  ROLLOCO HOLDINGS, INC., a Canadian )   **CASE NO.: 5:16-cv-2334**
    Corporation; CATHY ROLLO, an       )
13  individual; and, TONY ROLLO, an    )   **COMPLAINT FOR DAMAGES,**
    individual;                        )   **DECLARATORY RELIEF AND**
14                                     )   **INJUNCTIVE RELIEF**
                    Plaintiffs,        )
15                                     )   **DEMAND FOR JURY TRIAL**
           v.                          )
16                                     )   (1)   Violation of §10(b)-5 of the Securities
    VLP CAPITAL, INC., a California    )         Exchange Act of 1934 and California
17  Corporation; VLP CAPITAL, INC., a  )         Corporations Code §25400
    Nevada Corporation; VANGUARD       )   (2)   Fraud
18  LEISURE PROPERTIES REAL ESTATE     )   (3)   Intentional Misrepresentation
    INVESTMENT TRUST, a Trust created  )   (4)   Negligent Misrepresentation
19  under Canadian law; VLP CAPITAL, LLC, )  (5)  Breach of Contract
    a Limited Liability Company, state of )  (6)  Breach of the Implied Covenant of Good
20  incorporation unknown; VLP         )         Faith and Fair Dealing
    MANAGEMENT, LTD., a Canadian       )   (7)   Negligence
21  Corporation;  DESERT DUNES         )   (8)   Conversion
    MANAGEMENT, LLC, a Nevada Limited  )   (9)   Professional Negligence
22  Liability Company; DDGC HOLDINGS,  )   (10)  Breach of Fiduciary Duty
    LTD., a California Corporation; DDGC )  (11)  Negligent Infliction of Emotional Distress
23  OPERATIONS, LTD., a California     )   (12)  Unjust Enrichment
    Corporation; DESERT DUNES CONDOS,  )   (13)  Fraudulent Transfer – 11 U.S.C. §§544 and
24  LP; a California Limited Partnership; )       550 and California Civil Code §§3439.04(a)
    CALIFORNIA EAST COAST REGIONAL     )         and 3439.05
25  CENTER, LLC, USCIS REGIONAL        )   (14)  Violation of California Corporations Code
    CENTER; a California Limited Liability )       §25110
26  Company; GMS DEVELOPMENTS, LLC,    )

27

28

a Nevada Limited Liability Company;
CALIFORNIA FOREIGN INVESTMENT
AND IMMIGRATION CENTER, LLC, a
California Limited Liability Company;
AMAG, INC., a California Corporation;
R2H, LLC, an Arizona Limited Liability
Company; RICHARD BILOS MEDICAL
CORPORATION, a Canadian Corporation;
GLEN BRAYSHAW, an individual;
MICHAEL NYHUIS, an individual; SEAN
RUNNELS, an individual; and, GENE
O'BRIEN, ESQ., an individual,

             Defendants.

(15)  Breach of Fiduciary Duty – Corporation
      Code §§309 and 316
(16)  Violation of §202(a)(11) The Investment
      Advisers Act of 1940 and California
      Corporations Code §25230
(17)  Violation of 15 U.S.C. §78a, *et seq*. and
      California Corporations Code §25210
(18)  Violation of California Corporations Code
      §310
(19)  Control Person Liability – 15 U.S.C. §78t(a)
      and California Corporations Code §25504
(20)  Accounting
(21)  Declaratory Relief
(22)  Injunctive Relief

Plaintiffs Rolloco Holdings, Inc., Cathy Rollo and Tony Rollo ("Plaintiffs") complain against Defendants VLP Capital, Inc., a California Corporation, VLP Capital, Inc., a Nevada Corporation, Vanguard Leisure Properties Real Estate Investment Trust, VLP Capital, LLC, VLP Management, Ltd., Desert Dunes Management, LLC, DDGC Holdings, Ltd., DDGC Operations, Ltd., Desert Dunes Condos, LP, California East Coast Regional Center, LLC, USCIS Regional Center, GMS Developments, LLC, California Foreign Investment and Immigration Center, LLC, AMAG, Inc., R2H, LLC, Richard Bilos Medical Corporation, Glen Brayshaw, Michael Nyhuis, Sean Runnels and Gene O'Brien, Esq. ("Defendants"), as follows.

## INTRODUCTION

1.      The Plaintiffs invested their life savings in the amount of at least $2,810,000 with the Defendants.   As a result of the investments, Plaintiffs became the sole shareholders of Defendant VLP Capital, Inc. ("VLP Capital"), which owns real property located in Desert Hot Springs, California commonly known as Desert Dunes Golf Course ("DDGC").

2.      On March 22, 2013, VLP Capital purchased from PulteGroup, Inc. ("Pulte") 471 acres of undeveloped real property (the "Pulte Land") surrounding DDGC.  As a result, Plaintiffs became the sole owners of DDGC and the Pulte Land.

3.     Through numerous misrepresentations and fraudulent transactions, Defendants looted VLP Capital of its real property and other assets, and defrauded Plaintiffs.   Defendants Glen Brayshaw, Michael Nyhuis and Sean Runnels engaged in a corporate shell game to steal the Plaintiffs' money and orchestrate the fraud described herein.  Plaintiffs have never been repaid any of the funds provided to Defendants.

4.     As a result of Defendants' fraud, the Plaintiffs are virtually destitute and have been forced to sell their home.  The Plaintiffs request a judicial determination that they are the owners of VLP Capital, record owners of DDGC and the Pulte Land, or alternatively, damages in the amount of the highest value of the assets of VLP Capital, including all its real property since the time Plaintiffs became its sole shareholders, interest and attorney fees.  Alternatively, the Plaintiffs request compensatory damages of $2,810,000, and interest thereon, as set forth herein.

## PARTIES

5.     At all relevant times, Plaintiff Rolloco Holdings, Inc. is and was Canadian corporation, based in Winnipeg, Canada.  Plaintiff Cathy Rollo and Plaintiff Tony Rollo are the sole shareholders of Plaintiff Rolloco Holdings, Inc.

6.     At all relevant times, Plaintiff Cathy Rollo is and was an individual residing in Winnipeg, Canada.

7.     At all relevant times, Plaintiff Tony Rollo is and was an individual residing in Winnipeg, Canada.

8.     Plaintiffs Rolloco Holdings, Inc., Cathy Rollo and Tony Rollo are referred to herein collectively as "Plaintiffs."

9.     At all relevant times, Defendant VLP Capital, Inc. ("VLP Capital") is and was a California Corporation with a principal place of business in Palm Desert, California, and record owner of the real property which concerns the substantial part of this action.

10.     At all relevant times, Defendant VLP Capital, Inc. ("VLP Capital Nevada") is and was a Nevada Corporation with a principal place of business in Las Vegas, Nevada, and operating in Riverside County, California.

11.     At all relevant times, Defendant Vanguard Leisure Properties Real Estate Investment Trust (hereinafter referred to as the "REIT") is and was a Real Estate Investment Trust created under the laws of the province of Alberta, Canada, operating in Riverside County, California, and is named solely in its capacity as holding an interest in real property in constructive trust for Plaintiffs.

12.     At all relevant times, Defendant VLP Capital, LLC is and was a Limited Liability Company, state of incorporation unknown, operating in Riverside County, California.

13.     At all relevant times, Defendant VLP Management, Ltd. is and was Canadian Corporation, based in Alberta, Canada, operating in Riverside County, California.

14.     At all relevant times, Defendant Desert Dunes Management, LLC is and was a Nevada Limited Liability Company with a principal place of business in Las Vegas, Nevada, and operating in Riverside County, California.

15.     At all relevant times, Defendant DDGC Holdings, Ltd. is and was a California Corporation with a principal place of business in Palm Desert, California.  Plaintiffs are informed and believe that "DDGC" is an acronym for the Desert Dunes Golf Course.

16.     At all relevant times, Defendant DDGC Operations, Ltd. is and was a California Corporation with a principal place of business in Palm Desert, California.

17.     At all relevant times, Defendant Desert Dunes Condos, LP is and was a California Limited Partnership with a principal place of business in Palm Desert, California.

/ / /

/ / /

18.     At all relevant times, Defendant California East Coast Regional Center, LLC, USCIS Regional Center (hereinafter, the "Regional Center") is and was a California Limited Liability Company with a principal place of business in Palm Desert, California, the General Partner of Defendant Desert Dunes Condos, LP, and is named solely in its capacity as holding an interest in real property in constructive trust for Plaintiffs.

19.     At all relevant times, Defendant GMS Developments, LLC is and was a Nevada Limited Liability Company with a principal place of business in Las Vegas, Nevada, and operating in Riverside County, California.  Plaintiffs are informed and believe that "GMS" is an acronym for the first names of Defendants Glen Brayshaw, Michael Nyhuis and Sean Runnels.

20.     At all relevant times, Defendant California Foreign Investment and Immigration Center, LLC (hereinafter, "CFIIC") is and was a California Limited Liability Company with a principal place of business in Palm Desert, California, and is named solely in its capacity as holding an interest in real property in constructive trust for Plaintiffs.

21.     At all relevant times, Defendant AMAG, Inc. is and was a California Corporation with a principal place of business in Santa Monica, California, operating in Riverside County, California, and named solely in its capacity as holding an interest in real property in constructive trust for Plaintiffs.

22.     At all relevant times, Defendant R2H, LLC is and was an Arizona Limited Liability Company with a principal place of business in Phoenix, Arizona, operating in Riverside County, California, and is named solely in its capacity as holding an interest in real property in constructive trust for Plaintiffs.

23.     At all relevant times, Defendant Richard Bilos Medical Corporation is and was a Canadian Corporation based in Winnipeg, Canada, and is named solely in its capacity as holding an interest in real property in constructive trust for Plaintiffs.

24.   Defendants VLP Capital, VLP Capital Nevada, VLP Capital, LLC, VLP Management, Ltd., Desert Dunes Management, LLC, DDGC Holdings, Ltd., DDGC Operations, Ltd., Desert Dunes Condos, LP and GMS Developments, LLC are referred to herein collectively as the "Entity Defendants."   (The remaining corporate Defendants – the REIT, the Regional Center, CFIIC, AMAG, Inc., R2H, LLC and Richard Bilos Medical Corporation are named solely in their capacity as holding an interest in real property in constructive trust for Plaintiffs.)

25.   All of the acts and omissions set forth herein were undertaken by the Entity Defendants' agents, who were acting within the scope of their employment.   The Entity Defendants are therefore liable for said acts and omissions, and consequent damage, as set forth herein.

26.   At all relevant times, Defendant Glen Brayshaw is and was an individual residing in Riverside County, California, and a control person of each Entity Defendant under federal and California law, including but not limited to Section 20(a) of The Securities Exchange Act of 1934 (15 U.S.C. § 78a, *et seq*.), 15 U.S.C. §78t(a) and California Corporations Code §25504.

27.   At all relevant times, Defendant Michael Nyhuis is and was an individual residing in Riverside County, California, and a control person of each Entity Defendant under federal and California law, including but not limited to Section 20(a) of The 1934 Act, 15 U.S.C. §78t(a), *et seq.* and California Corporations Code §25504.

28.   At all relevant times, Defendant Sean Runnels is and was an individual residing in Riverside County, California, and a control person of each Entity Defendant under federal and California law, including but not limited to Section 20(a) of The 1934 Act, 15 U.S.C. §78t(a), *et seq.* and California Corporations Code §25504.

/ / /

/ / /

29.     At all relevant times, Defendant Gene O'Brien, Esq. is and was an individual residing in Riverside County, California, a California-admitted attorney, and a control person of each Entity Defendant under federal and California law, including but not limited to Section 20(a) of The 1934 Act, 15 U.S.C. §78t(a), *et seq.* and California Corporations Code §25504.

30.     Defendants Glen Brayshaw, Michael Nyhuis, Sean Runnels and Gene O'Brien, Esq. are referred to herein collectively as the "Individual Defendants."

31.     The Entity Defendants and Individual Defendants are referred to herein collectively as the "Defendants."

32.     The conduct described herein was accomplished with the knowledge and involvement of all Defendants, who conspired to defraud the Plaintiffs.   Defendants knew of the wrongful activities and tortuous scheme with knowledge of its unlawful purpose, and intended to aid in its commission, which resulted in the Plaintiffs' damages described herein.

**TIMELINE**

| | |
|---|---|
| **2009** | The REIT is formed. |
| **June 2011** | Defendant VLP Capital is formed. |
| **July 14, 2011** | The REIT loans Defendant DDGC Holdings, Ltd. $2,150,000. |
| **December 14, 2011** | Plaintiffs wire transfer $200,000 to Defendant DDGC Holdings Ltd. |
| **December 20, 2011** | Defendant VLP Capital obtains a Deed of Trust on DDGC in the amount of $5,500,000. |
| **February 24, 2012** | Plaintiffs wire transfer $70,000 to Defendant VLP Capital. |
| **June 12, 2012** | Defendant Glen Brayshaw represents to Plaintiff Cathy Rollo that Defendants were closing on a "$20,000,000 deal" that week. |
| **June 13, 2012** | Plaintiffs wire transfer $150,000 to Defendant DDGC Operations Ltd. |
| **July 3, 2012** | Defendants solicit a fourth short-term loan from the Plaintiffs in the amount of $1,390,000. |

| | | |
|---|---|---|
| **July 4, 2012** | | The Legal Opinion from the Hewell Law Firm confirms that Plaintiffs will become one-hundred percent (100%) shareholders of Defendant VLP Capital Inc. as a result of the $1,390,000 transaction. |
| **July 4, 2012** | | Defendants Glen Brayshaw, Michael Nyhuis and Gene O'Brien, Esq. execute personal guarantees in connection with the $1,390,000 transaction. |
| **July 5, 2012** | | Plaintiffs wire transfer $1,390,000 to Defendant VLP Capital. Plaintiffs become one-hundred percent (100%) shareholders of Defendant VLP Capital Inc. |
| **December 20, 2012** | | Without any approval by or notice to the Plaintiffs, Defendants cause Defendant VLP Capital to assign $3,500,000 of the $5,500,000 Deed of Trust on DDGC to Defendant AMAG, Inc. |
| **March 6, 2013** | | Plaintiffs wire transfer $200,000 to Defendant VLP Capital. |
| **March 22, 2013** | | Defendant VLP Capital closes on the Pulte Land purchase. |
| **June 1-12, 2013** | | Plaintiffs wire transfer a total of $800,000 to Defendant VLP Capital in two separate transfers. |
| **June 13, 2013** | | Defendants, through the so-called "Shareholders Agreement" in connection with the June 2013 $800,000 loans, fraudulently attempt to steal ninety-percent (90%) of the Plaintiffs' equity in Defendant VLP Capital. |
| **June 19, 2013** | | Defendant VLP Capital Nevada assigns to the Plaintiffs (but did not record) $3,500,000 of a $4,000,000 Deed of Trust on the Pulte Land. |
| **August 1, 2013** | | Plaintiff Cathy Rollo is appointed to the Board of Directors of Defendant VLP Capital. |
| **February 26, 2015** | | Without any approval by or notice to the Plaintiffs, Defendants sell the North side of the Pulte Land to Defendant GMS Developments, LLC via a Grant Deed.  (Plaintiffs are informed and believe that "GMS" is an acronym for the first names of Defendants Glen Brayshaw, Michael Nyhuis and Sean Runnels.)  Defendant GMS Developments, LLC simultaneously grants a Deed of Trust to Defendant R2H, LLC for the North side of the Pulte Land in exchange for a $4,850,000 Deed of Trust. |
| **May 14, 2015** | | Without any approval by or notice to the Plaintiffs, Defendants cause Defendant VLP Capital to grant a $2,000,000 2nd Deed of Trust to Defendant R2H, LLC to the South side of the Pulte Land. |

/ / /

| | |
|---|---|
| **November 10, 2015** | Defendants solicit Plaintiffs' execution of fraudulent Share/Membership Transfer and the Membership Acceptance Agreements. |
| **November 20, 2015** | Without any approval by or notice to the Plaintiffs, Defendants cause Defendant VLP Capital to grant a Deed of Trust to Defendant R2H, LLC, in the amount of $4,000,000 payable by Defendant VLP Capital Nevada. |
| **May 2016** | Without any approval by or notice to the Plaintiffs, Defendants assign $250,000 of the $5,500,000 Deed of Trust on DDGC to Defendant Richard Bilos Medical Corporation. |
| **May 23, 2016** | Plaintiffs demand the return of their funds, but are ignored. |
| **July 8, 2016** | Defendants ask Plaintiffs to execute a so-called **"Reduction Agreement,"** to which the Plaintiffs never agreed and never executed. |

## ALTER EGO

33.     Plaintiffs are informed and believe that at all times mentioned herein Defendants were the alter-ego of each other and there existed such unity of interest and ownership between them that individuality and separateness has ceased.

34.     Plaintiffs are informed and believe that at all times mentioned herein that the Entity Defendants were mere shells, instrumentalities and conduits through which the Individual Defendants carry on their business in the corporate names, exercising such control and dominion of the Entity Defendants that any individuality or separateness of the Entity Defendants did not and does not exist.

35.     Plaintiffs are informed and believe that the Entity Defendants are so undercapitalized that they could not and cannot meet their corporate obligations.  Whatever assets the Entity Defendants possessed have been diverted to the Individual Defendants, or others at their direction, to the detriment of creditors including Plaintiffs, and that the corporate form has been otherwise disregarded so that the Entity Defendants are united with the personal interests of the Individual Defendants.

36.     Plaintiffs are informed and believe that the Individual Defendants so managed and operated the Entity Defendants so as to mingle the Entity Defendants' assets with their own individual assets, according to the Individual Defendants' convenience and in order to make the Entity Defendants unable to meet their obligations to Plaintiffs.

37.     Plaintiffs allege that the Individual Defendants are personally liable for any damages caused by the Entity Defendants.  Plaintiffs are informed and believe that any further adherence to the fiction of a separate existence of the Entity Defendants as entities distinct from the Individual Defendants would permit an abuse of the corporate privilege and would either sanction a fraud against Plaintiffs or otherwise result in an injustice to Plaintiffs.  Upon information and belief, the Entity Defendants exist solely to carry out the fraudulent activities described herein.

38.     Plaintiffs are informed and believe that each Defendant was the agent of the others in connection with all activities referenced in this Complaint and each is responsible for the activities of the others.

## JURISDICTION AND VENUE

39.     This Court also has original subject matter jurisdiction pursuant to 28 U.S.C. §1331, per Sections 21(d)(1), 21(d)(3)(A), 21(e), and 27 of The Securities Exchange Act of 1934, 15 U.S.C. §§78u(d)(1), 78u(d)(3)(A), 78u(e) & 78aa.  This Court also has original subject matter jurisdiction of this action pursuant to 28 U.S.C. §1332(a)(2), as it between citizens of a foreign state and United States citizens, and the amount in controversy is in excess of $75,000.

40.     Venue is proper in this District pursuant to 28 U.S.C. §1391(b), and Section 27 of The 1934 Act, 15 U.S.C. §78aa.  Defendants, directly and indirectly, made use of the mails and the means and instrumentalities of interstate commerce in connection with the acts alleged in this Complaint, and a substantial part of this action concerns real property located in this District.

## FACTS COMMON TO ALL CAUSES OF ACTION

41.    Plaintiffs Cathy Rollo and Tony Rollo met Defendant Glen Brayshaw in November 2011.   Defendant Brayshaw represented to the Plaintiffs that the Defendants owned DDGC, and were purchasing 471 acres of undeveloped real property adjacent to DDGC – the "Pulte Land" – to develop a condominium project ("Condominium Project") thereon.

### *A.    $200,000 Short-Term Loan – December 2011*

42.    In December 2011, the Individual Defendants represented to the Plaintiffs that they had a funding gap in connection with the purchase of the Pulte Land, and solicited a short-term loan from the Plaintiffs in the amount of $200,000.

43.    The Individual Defendants represented to the Plaintiffs, among other things, that at all times, the Plaintiffs' $200,000 short-term loan would be secured by a Deed of Trust on DDGC.   The Plaintiffs relied upon and never would have agreed to the transaction in the absence of the Individual Defendants' material representations, among others, that at all times the Plaintiffs' loan would be secured by a Deed of Trust on DDGC.

44.     The Individual Defendants promised the Plaintiffs in exchange for the loan: (a) Plaintiffs would be paid one-percent (1%) interest on the $200,000 principal per month until principal repayment; and, (b) upon completion of the Condominium Project, the Plaintiffs' $200,000 principal would be returned, and Plaintiffs would be granted a "Premium Condominium."

45.    At the Individual Defendants' direction, the Plaintiffs sent a wire transfer through their corporation, Plaintiff Rolloco Holdings, Inc. to Defendant DDGC Holdings Ltd. in the amount of $200,000 on or about December 14, 2011.

/ / /

/ / /

46.     The Individual Defendants provided the Plaintiffs with: (a) a Deed of Trust on DDGC (recorded with the Riverside County Recorder's Office on December 14, 2011, whereby Plaintiff Rolloco Holdings, Inc. is a beneficiary of the DDGC property); and, (b) a Promissory Note, true and correct copies of which are attached hereto as Exhibit "A" and incorporated herein.

47.     The Plaintiffs never received any of the promised interest payments on the $200,000 short-term loan, nor was any amount of the principal ever repaid to the Plaintiffs.

**B.     $70,000 Short-Term Loan – February 2012**

48.     In February 2012, the Individual Defendants solicited a second short-term loan from the Plaintiffs in connection with the purchase of the Pulte Land in the amount of $70,000.

49.     At the Individual Defendants' direction, the Plaintiffs wire transferred through Plaintiff Rolloco Holdings, Inc. the amount of $70,000 to Defendant DDGC Holdings Ltd. on February 24, 2012.     In exchange, the Individual Defendants promised the Plaintiffs: (a) repayment of the $70,000 principal on or before March 20, 2012; (b) ten (10) free rounds of golf at DDGC; and, (c) a one-week stay at Marriot's Shadow Ridge in Palm Desert, California.

50.     The Plaintiffs never would have agreed to the transaction in the absence of the Individual Defendants' repeated representations that the loans were secured at all times by a Deed of Trust on DDGC.

51.     The Individual Defendants provided the Plaintiffs with a Memorandum of Understanding, a true and correct copy of which is attached hereto as Exhibit "B" and incorporated herein, which memorialized the second short-term loan, and further memorialized the first short-term loan.  On March 20, 2012, the Plaintiffs received repayment in the amount of $33,625 on the $70,000 short-term loan, but never received the other promised consideration.

/ / /

### C.      $150,000 Short-Term Loan – June 2012

52.     In June 2012, the Individual Defendants solicited a third short-term loan from the Plaintiffs in the amount of $150,000 in connection with the purchase of the Pulte Land.

53.     Among other false statements, in June 12, 2012 correspondence, a true and correct copy of which is attached hereto as Exhibit "C" and incorporated herein, Defendant Brayshaw represented that Defendants were closing on a "$20,000,000 deal" and would pay off the Pulte Land the next week.

54.     The Plaintiffs relied upon and would not have agreed to the transaction in the absence of the Individual Defendants' representations, among others, regarding the "$20,000,000 deal" and imminent closing on the Pulte Land, in addition to the prior representations that the Plaintiffs would at all times be secured by a Deed of Trust on DDGC.

55.     The Individual Defendants represented to the Plaintiffs that in exchange for the $150,000 short-term loan, the Plaintiffs would be paid $466,669 in five years "or sooner," as follows: (a) $150,000 repayment of principal; and; (b) plus interest (including interest owed on the February 2012 and December 2011 short-term loans).

56.     At the Individual Defendants' direction, the Plaintiffs wire transferred through Plaintiff Rolloco Holdings, Inc. the amount of $150,000 to Defendant DDGC Holdings Ltd. on or about June 12, 2012.   The Individual Defendants provided the Plaintiffs with a Stock Subscription Agreement, a true and correct copy of which is attached hereto as Exhibit "D" and incorporated herein, which memorialized the $150,000 short-term loan.

### D.      $1,390,000 Short-Term "Bridge Loan" – July 2012

57.     In July 2012, the Individual Defendants solicited a fourth short-term loan from the Plaintiffs in the amount of $1,390,000 in connection with the purchase of the Pulte Land.

/ / /

58.     Among other material misstatements, the Individual Defendants represented to the Plaintiffs that they had borrowed $19,500,000 from an Indian Band in Manitoba, Canada, but did not expect to receive those funds in advance of the closing date on the Pulte Land purchase, and that to extend the closing date on the Pulte Land purchase (*i.e.*, to provide them ample time to secure the $19,500,000), Pulte required a deposit from the Defendants.   The Individual Defendants solicited a so-called "bridge loan" from the Plaintiffs in the amount of $1,390,000 to fund the purported deposit required by Pulte.

59.     The Individual Defendants falsely represented to the Plaintiffs that the $1,390,000 would be repaid immediately once the $19,500,000 was received from the Indian Band and, among other false statements, if the $19,500,000 was not received, the Defendants had in excess of $1,800,000 in other funds set aside to repay the Plaintiffs.

### i.     *Plaintiffs Became the Sole Shareholders of Defendant VLP Capital*

60.     Plaintiffs became the sole shareholders of Defendant VLP Capital as a result of the $1,390,000 loan.  Defendant Brayshaw represented in July 3, 2012 correspondence to the Plaintiffs, a true and correct copy of which is attached hereto as <u>Exhibit "E"</u> and incorporated herein, that "we have already issued all 10,000,000 shares of VLP" to the Plaintiffs.

61.     To convince Plaintiffs to make the loan, the Individual Defendants retained the San Diego based Hewell Law Firm to render a legal opinion ("Legal Opinion") to the Plaintiffs regarding the effect of the loan, a true and correct copy of which is attached hereto as <u>Exhibit "F"</u> and incorporated herein, which states:

> "This will also confirm that **Cathy Rollo and Tony Rollo will own all of the authorized and outstanding common shares of VLP Capital, Inc**." *Emphasis added.*

/ / /

/ / /

### ii.    *Plaintiffs Had the Right to Foreclose on DDGC*

62.    Among other things, the Individual Defendants represented to the Plaintiffs that the Plaintiffs had the right to demand repayment of $1,390,000 loan on September 30, 2012; and, if repayment was not made within thirty (30) days of the Plaintiffs' loan call, the <u>Plaintiffs had the right to foreclose on DDGC</u>.   Defendant Brayshaw represented to the Plaintiffs (in <u>Exhibit "E"</u>) that the Plaintiffs would have "control of our $5,500,000 instrument ([which] gives them the power to foreclose on the golf course [the DDGC property] at any time)".

63.    In addition, the Legal Opinion (<u>Exhibit "F"</u>) states:

"This will confirm that VLP Capital, Inc., a California corporation, holds a Deed of Trust by which the promissory note dated December 11, 2011, for the sum of $5,500,000, is secured by the Desert Dunes Golf Course property . . .. **If VLP Capital were to foreclose under the power of sale and other rights accorded it under that Deed of Trust, it would own the Property** [subject to senior liens totaling $1,300,000]." *Emphasis added*.[1]

64.    Defendants Glen Brayshaw, Michael Nyhuis and Gene O'Brien, Esq. each executed irrevocable personal guarantees ("Personal Guarantees") in connection with the $1,390,000 short-term bridge loan, true and correct copies of which are attached hereto as <u>Exhibit "I"</u> and incorporated herein.

65.    The Plaintiffs relied upon the Individual Defendants' material representations recited in ¶¶57-64, among others, the Legal Opinion, and the Personal Guarantees.

66.    But for the material representations recited in ¶57-64, among others, the Legal Opinion, the Personal Guarantees and the Individual Defendants' representations that the loans were secured at all times by a Deed of Trust on DDGC, the Plaintiffs would not have made the loan.

---

[1]    Defendant O'Brien represented to the Plaintiffs in July 1, 2012 correspondence, a true and correct copy of which is attached hereto as <u>Exhibit "G"</u> and incorporated herein, that VLP Capital, LLC held a Deed of Trust on DDGC in the amount of $5,500,000.  A true and correct copy of that same Deed of Trust is attached hereto as <u>Exhibit "H"</u> and incorporated herein.

67.     On July 4, 2012, the Plaintiffs wire transferred $1,390,000 to Defendant VLP Capital via Defendant Gene O'Brien, Esq.'s client trust account.

68.     As part of the $1,390,000 loan, the Individual Defendants provided the Plaintiffs with: (a) a Memorandum of Understanding; and, (b) a Stock Subscription Agreement (which confirmed that the Plaintiffs owned one-hundred percent (100%) of the outstanding shares of Defendant VLP Capital), true and correct copies of which are attached hereto as Exhibit "J" and incorporated herein, and whereby in exchange for the $1,390,000 short-term bridge loan, the Plaintiffs: (a) would be paid $1,400,000 in return of principal and $350,000 in interest; and, (b) acquired all 10,000,000 authorized common shares of Defendant VLP Capital and were its sole shareholders.

### iii.     *Defendants Requested that Plaintiffs Forebear from Calling the $1,390,000 Bridge Loan*

69.     Mere days before the September 30, 2012 call date for the $1,390,000 bridge loan, the Individual Defendants represented to the Plaintiffs that they had formed a group of investors – a so-called "syndicate" which would be a repayment source.

70.     Among other misrepresentations, Defendant Brayshaw falsely represented in September 29, 2012 correspondence, a true and correct copy of which is attached hereto as Exhibit "K" and incorporated herein, that the Defendants had received $6,000,000 through the syndication offering, and had lined up another $9,000,000 in funding through a combination of loans, an unnamed "billionaire guy" and the "guy who used to own the Los Angeles Kings." Defendant Brayshaw falsely represented to the Plaintiffs that with the $6,000,000 in syndicate funds, the Individual Defendants would complete the purchase of the Pulte Land and get the Condominium Project started.

/ / /

/ / /

71.    On September 29, 2012 (<u>Exhibit "K"</u>), Defendant Brayshaw falsely represented that the Condominium Project would generate $200,000,000 in profits within four (4) to seven (7) years, and the Plaintiffs would receive "$10,000,000 in dividends."

72.    Based on the foregoing misrepresentations, among others, the Individual Defendants pressured the Plaintiffs to forebear from calling the $1,390,000 short-term bridge loan, in exchange for which the Plaintiffs would receive: (a) a five percent (5%) ownership interest in the Condominium Project, which the Defendants falsely represented would be worth $10,000,000 in four (4) to seven (7) years; and, (b) return of their $1,390,000 principal in six (6) to nine (9) months; and, (c) $350,000 in interest to the Plaintiffs.

73.    The Individual Defendants guaranteed the return of the Plaintiffs' $1,390,000 principal, and that in six (6) to nine (9) months, Defendants would receive enough funds from foreign investments to repay the $1,390,000 in principal owed.  The Individual Defendants represented to the Plaintiffs that in the event the funds from foreign investments – the "EB-5 funds"[2] – were not received as expected, the Individual Defendants had enough funds through the syndication offering to repay the $1,390,000 principal.

74.    The Individual Defendants also represented that the Plaintiffs' Deed of Trust on DDGC would remain in place, and the Plaintiffs would retain ownership of <u>all</u> 10,000,000 authorized common shares of Defendant VLP Capital until the $1,390,000 principal was repaid.

75.    Based on material representations of the Individual Defendants recited in ¶¶57-64 and 69-74, among others, the Legal Opinion, the Personal Guarantees and the Individual Defendants' representations that the loans were secured at all times by a Deed of Trust on DDGC, the Plaintiffs did not call the $1,390,000 short-term bridge loan.  But for the foregoing

---

[2]    In 1990, Congress created the EB-5 program to stimulate the economy through capital investment by foreign investors.  The immigrant investor program sets aside visas for foreign investors who invest in approved commercial enterprises.

material representations of the Individual Defendants, among others, the Plaintiffs would have immediately called the $1,390,000 bridge loan.

76.     The Individual Defendants provided the Plaintiffs with a Memorandum of Understanding, Re-Purchase and Security Agreement, all of which related to the $1,390,000 loan, a true and correct copy of which is attached hereto as Exhibit "L" and incorporated herein.

**E.     $200,000 Short-Term Loan – March 2013**

77.     In March 2013, the Individual Defendants pressured Plaintiffs to make yet another short-term loan in connection with the purchase of the Pulte Land.  As a result, the Plaintiffs wire transferred through Rolloco Holdings, Inc. $200,000 to Defendant VLP Capital, LLC on or about March 13, 2013.

78.     The Individual Defendants falsely represented to the Plaintiffs, among other things, that in exchange for the $200,000 short-term loan, the Plaintiffs would be paid $218,086 on or before May 15, 2013.  The Individual Defendants provided the Plaintiffs with: (a) a Loan Agreement; and, (b) a Promissory Note, true and correct copies of which are attached hereto as Exhibit "M" and incorporated herein.

79.     But for the material representations of the Defendants recited in ¶¶57-64, 69-74 and 77-78, among others, the Legal Opinion, the Personal Guarantees and the Individual Defendants' representations that the loans were secured at all times by a Deed of Trust on DDGC, the Plaintiffs would not have made this additional loan.

**i.     Defendants Closed on the Pulte Land – March 2013**

80.     On March 19, 2013, Defendant VLP Capital closed on the Pulte Land.  Yet Defendants never paid the Plaintiffs the promised interest payments, or principal, in connection with any of the loans.

/ / /

### F. $800,000 Short-Term Loan – May 2013

81.     Around May 15, 2013 (the date the March 2013 $200,000 loan was to be repaid), the Plaintiffs met with the Individual Defendants in Palm Springs.  The Plaintiffs expected to be repaid a portion of their previous loans.  However, the Individual Defendants then pressured Plaintiffs for yet another short-term loan of $800,000.

82.     Among other representations, in May 30, 2013 correspondence, a true and correct copy of which is attached hereto as Exhibit "N" and incorporated herein, Defendant Brayshaw represented that the Individual Defendants had a number of sources from which they could timely repay the $800,000 loan, including but not limited to: (a) selling a portion of the Pulte Land for $12,000,000; (b) the EB-5 funds; and, (c) "$15,000,000" from a "lender in New York."

83.     Defendant Glen Brayshaw pressured the Plaintiffs that the sale of a portion of the Pulte Land for $12,000,000 would guarantee that the Plaintiffs would receive repayment of their $800,000 principal in the fall of 2013.   Defendant Glen Brayshaw also represented in May 2013 correspondence to Plaintiffs' bank, Assiniboine Credit Union, a true and correct is attached hereto as Exhibit "O" and incorporated herein, that the $800,000 principal would be deposited in Plaintiffs' bank account by the end of February 2014.

84.     The Individual Defendants falsely represented to the Plaintiffs that in exchange for the $800,000 short-term loan: (a) by the fall of 2013, the Defendants would repay the principal of $800,000 and $350,000 in interest to the Plaintiffs; and, (b) Defendants would Assign to the Plaintiffs an interest in a Deed of Trust on the Pulte Land in the amount of $3,500,000 (*i.e.*, Defendant VLP Capital Nevada was beneficiary of a $4,000,000 Deed of Trust on the Pulte Land, and would assign to the Plaintiffs its (Defendant VLP Capital Nevada's) interest in the first $3,500,000 of that Deed of Trust).

/ / /

85.     But for the material representations of the Individual Defendants recited in ¶¶57-64, 69-74, 77-78 and 81-84, among others, the Legal Opinion, the Personal Guarantees and the Individual Defendants' representations that the loans were secured at all times by a Deed of Trust on DDGC, the Plaintiffs wire transferred an additional $800,000 to Defendant VLP Capital, LLC.

86.     In order to fund the $800,000 loan, Plaintiffs borrowed funds through a home equity loan in the amount of $403,000, a fact known to the Individual Defendants.

87.     The Individual Defendants provided the Plaintiffs with: (a) a Shareholder Agreement; (b) an Assignment of Deed of Trust, true and correct copies of which are attached hereto as Exhibit "P" and incorporated herein, which memorialized the $800,000 short-term loan and whereby Plaintiff Cathy Rollo would be named as a member of Board of Directors of Defendant VLP Capital.

### i.     *Plaintiffs Forced to Sell Their Home*

88.     In the fall of 2013, Defendant Brayshaw Glen falsely represented to the Plaintiffs that the Individual Defendants decided not to take the $12,000,000 land sale deal, as they had secured a "better" $60,000,000 line of credit deal.  This decision was made without Plaintiffs' knowledge or approval, and based upon information and belief, without approval of Defendant VLP Capital's Board of Directors.

89.     Defendant Brayshaw Glen later informed the Plaintiffs that the $60,000,000 line of credit deal fell through.

90.     When Plaintiffs did not receive repayment of the $800,000 loan principal in the fall of 2013, as promised by the Individual Defendants, Plaintiffs were forced to sell their home in order to have money to live on.

/ / /

### G.    *Fraudulent Membership Acceptance Agreement – November 2015*

91.    On November 10, 2015, Plaintiff Cathy Rollo met with Defendant Glen Brayshaw and Defendant Sean Runnels in Palm Springs, at which time Brayshaw and Runnels falsely represented that Plaintiffs must sign certain documents.

92.    Defendant Brayshaw and Defendant Runnels falsely represented to Plaintiff Cathy Rollo that the documents would transfer the Plaintiffs' shares of Defendant VLP Capital to Defendant VLP Capital Nevada and the sole effect of the transaction was to hold dividends from the Condominium Project.

93.    Defendant VLP Capital Nevada was a newly formed a corporation, and had no operations or assets.  Plaintiffs never received a Private Placement Memorandum ("PPM") or any disclosure regarding Defendant VLP Capital Nevada.  Upon information and belief, the Individual Defendants were the directors of Defendant VLP Capital Nevada.

94.    The proposed November 10, 2015 Agreement was a further effort to defraud the Plaintiffs of their one-hundred percent (100%) interest in VLP Capital.  Plaintiff Cathy Rollo was pressured to sign the documents without reading them, and the Defendants represented the documents to her as routine and inconsequential.

95.    The document was a so-called Share/Membership Transfer Agreement.   On November 13, 2015, Defendant Brayshaw sent Plaintiff Tony Rollo an almost identical agreement, a so-called Membership Transfer Agreement.   True and correct copies of the November 2015 Agreements are attached hereto as Exhibit "Q" and incorporated herein.

96.    The Share/Membership Transfer Agreement and Membership Transfer Agreement were each intended to defraud the Plaintiffs of their one-hundred percent (100%) interest in VLP Capital that had been purchased when they loaned the Defendants $1,390,000.

/ / /

### H. Defendants Repeatedly Represented to Plaintiffs that their Loans were Safe, Secured by Real Property and Would be Repaid

97.     At all times, from the first loan in December 2011 and as recently as June 2016, the Defendants falsely represented to the Plaintiffs that their loans were safe, secured by land and would shortly be repaid, and Defendants would honor all agreements.   Despite those repeated assurances, Plaintiffs' demands for the return of their funds have been refused by the Defendants.

### I. Material Misrepresentations and Proscribed Fraudulent Securities Sales Practices

98.     Federal securities law requires that all material facts in connection with the offer or sale of investments or securities must be disclosed.  Section 10(b) of The Exchange Act of 1934, and Rule 10b-5 promulgated thereunder (15 U.S.C. §78j(b); 17 C.F.R. 240.10b-5).

99.     California Corporations Code §25401 states:

"It is unlawful for any person to offer or sell a security in this state . . . by means of any written or oral communication which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading."

100.     The Defendants falsely, or with reckless disregard for the truth, intentionally made the following material false representations or omissions, among others, to the Plaintiffs, which they relied upon as Defendants intended, in connection with the sale of the securities described herein:

**June 12, 2012**

▪     Defendants were closing a "$20,000,000 deal" during the second week of June 2012.  Exhibit "C".

▪     Defendants were paying off the Pulte Land "in full cash" during the third week of June 2012.  Exhibit "C".

/ / /

/ / /

**July 3, 2012**

▪ Defendants failed to disclose to the Plaintiffs that the REIT then held a significant number of shares in Defendant VLP Capital, despite that Plaintiffs owned one-hundred percent (100%) of the shares of Defendant VLP Capital and were its sole shareholder - as demonstrated by Exhibit "E", Defendant Brayshaw's July 3, 2012 correspondence; Exhibit "F" the Legal Opinion; and, Exhibit "J", the July 4, 2012 Memorandum of Understanding and Stock Subscription Agreement.

Defendant Brayshaw was the manager of the REIT at the same time he was a board member of Defendant VLP Capital, as well as party to contracts with Defendant VLP Capital in which he had a material interest, which resulted in an undisclosed conflict among Defendant Brayshaw, Defendant VLP Capital, the REIT, and the Plaintiffs.

**September 29, 2012**

▪ That "there is upwards of $200,000,000 in profits that can be pulled out the [Condominium Project] over the next 4-7 years" and Plaintiffs would receive "$10,000,000 in dividends." Exhibit "K".

▪ Defendants had secured all of the funds needed to complete the purchase of the Pulte Land. Exhibit "K".

▪ Defendants had lined up $9,000,000 in funding for the Condominium Project through a combination of loans, an unnamed "billionaire guy" and the "guy who used to own the Los Angeles Kings." Exhibit "K".

▪ Defendants had $6,000,000 in "syndicate funds," from which they could complete the purchase of the Pulte Land and finance "upfront soft costs" to get the Condominium Project started. Exhibit "K".

**October 12, 2012**

▪ The Memorandum of Understanding, Re-Purchase and Security Agreement (Exhibit "L") falsely states that the Plaintiffs had previously purchased shares of Defendant DDGC Holdings, Ltd. for a total of $1,800,000, when in fact the Plaintiffs had purchased and then owned one-hundred percent (100%) of the authorized shares of Defendant VLP Capital.

**December 20, 2012**

▪ Without approval by or notice to the Plaintiffs, who owned one-hundred percent (100%) of Defendant VLP Capital, Defendants assigned $3,500,000 of the $5,500,000 Deed of Trust on DDGC to Defendant AMAG, Inc. In addition to the fact that the assignment was an *ultra vires* corporate act, the Plaintiffs received no portion of the $3,500,000 purportedly paid by Defendant AMAG, Inc.

**May 30, 2013**

- Defendants had "$15,000,000" from a "lender in New York," which would be used to repay to the Plaintiffs.  Exhibit "N".

- The total capitalization of Defendant VLP Capital was 12,000,000 shares and Defendants would issue the Plaintiffs 1,200,000 shares representing ten-percent (10%) of Defendant VLP Capital, when all previous agreements and representations confirmed that the Plaintiffs already owned one-hundred percent (100%) of Defendant VLP Capital.

- Plaintiffs are informed and believe that at the same time Defendants represented to Plaintiffs that Plaintiffs owned one-hundred percent (100%) of Defendant VLP Capital, in fact, upon belief, the REIT controlled by the other Defendants owned a percentage of VLP Capital, which was never disclosed to the Plaintiffs.

- Defendants had a number of sources from which they could timely repay the $800,000 loan, including but not limited to: (a) selling a portion of the Pulte Land for $12,000,000; (b) the EB-5 funds; and, (c) "$15,000,000" from a "lender in New York."  Exhibit "N".

- The unrecorded Assignment of a Deed of Trust on the Pulte Land in the amount of $3,500,000 (Exhibit "P") was all that was needed to be effective under California law.

**June 13, 2013**

- Defendants attempted to defraud the Plaintiffs by pressuring them to sign an illusory and fraudulent so-called "Shareholder Agreement," whereby Plaintiffs purportedly returned ninety percent (90%) of their interest in Defendant VLP Capital in exchange for no consideration.  Exhibit "Q".

  At the time they executed the agreement, Plaintiffs owned one-hundred percent (100%) of the shares of Defendant VLP Capital, which owned DDGC and the Pulte Land.  Through the purported agreement, Plaintiffs loaned Defendants yet another $800,000, and purportedly gave up ninety percent (90%) of their interest in Defendant VLP Capital.  In other words, the Plaintiffs contributed money to have their equity diluted by ninety percent (90%).  The purported agreement is fraudulent (as it operates to defraud Plaintiffs of 90% of their equity), illusory and fails for lack of consideration.  **In addition, the agreement is void because signatory Michael Chiapetta's signature is forged.**

**May 29, 2014**

- Defendant VLP Capital granted two Deeds of Trust on the Pulte Land to the REIT in the aggregate amount of $8,000,000.  The REIT then reconveyed both Deeds of Trust on January 23, 2015.

/ / /

Despite that Plaintiffs were the sole shareholders of Defendant VLP Capital, and Plaintiff Cathy Rollo had been formally appointed to the its Board of Directors on August 1, 2013, no notice was provided to Plaintiffs regarding the transactions, no board approval was obtained and no accounting was made relating to the transaction.   Additionally, despite that Plaintiffs were the sole shareholders of Defendant VLP Capital, they received no consideration in connection with the reconveyances of the two Deeds of Trust.

Defendant Glen Brayshaw never disclosed his status as the manager and a board member of the REIT while simultaneously the control persona and a Board Member of VLP Capital.   Upon belief, Defendants Runnels and Nyhuis are also officers and board members of the REIT. The transactions were a conflict for the Individual Defendants and represent further self dealing.

**February 26, 2015**

- Without any approval by or notice to the Plaintiffs, who owned one-hundred percent (100%) of the outstanding shares of Defendant VLP Capital, and without any approval by or notice to Plaintiff Cathy Rollo, who was a Board Member, at some time unknown to the Plaintiffs the Defendants split the Pulte Land into two sections and sold the Northern portion of the Pulte Land to Defendant GMS Developments, LLC via a Grant Deed.   Upon information, no consideration was paid by Defendant GMS Developments, LLC for the Grant Deed.   Upon information, Defendant GMS Developments was an alter ego for Defendants Brayshaw, Nyhuis and Runnels.

On February 26, 2015, Defendant GMS Developments, LLC simultaneously granted a Deed of Trust to Defendant R2H, LLC for the Northern portion of the Pulte Land in exchange for a $4,850,000 Deed of Trust.   In addition to the fact that both transactions were *ultra vires* corporate acts, the Plaintiffs received no portion of the $4,850,000 purportedly paid by Defendant R2H, LLC to Defendant GMS Developments, LLC.

Neither of the foregoing transactions was disclosed to the Plaintiffs despite that they were the sole shareholders of Defendant VLP Capital.  There has never been an accounting of the transactions or disclosure of what happened to the $4,850,000 or any other amounts paid to Defendant GMS Developments, LLC for the assets of Defendant VLP Capital.   The forgoing transaction represents a looting of the significant corporate assets of VLP Capital by the Defendants.

**May 13, 2015**

- Without any approval by or notice to the Plaintiffs, who owned one-hundred percent (100%) of the outstanding shares of Defendant VLP Capital, Defendants caused it to grant a $2,000,000 2nd Deed of Trust to Defendant R2H, LLC to the South side of the Pulte Land. This transaction was not disclosed to the Plaintiffs, nor has there ever been an accounting of the transaction.   This transaction represents Defendants' further looting of the corporate assets of VLP Capital.

**November 10, 2015**

- The Share/Membership Transfer and the Membership Acceptance Agreement (Exhibit "Q") are fraudulent and void.  Plaintiff Cathy Rollo was pressured to sign the Share/Membership Transfer, which was misrepresented to her.  Moreover, the documents were not executed by the necessary parties.  Plaintiffs never received any disclosures, such as a Private Placement Memorandum ("PPM"), concerning Defendant Desert Dunes Management, LLC.

**November 20, 2015**

- On November 20, 2015 Defendants caused Defendant VLP Capital to grant a Deed of Trust to Defendant R2H, LLC, in the amount of $4,000,000 payable by Defendant VLP Capital Nevada on the Pulte Land.

  This transaction was not disclosed to the Plaintiffs despite that they were the sole shareholders of Defendant VLP Capital, as well as Board Members, nor has there ever been an accounting of the transaction.  This transaction represents a looting of the significant corporate assets of Defendant VLP Capital by the Defendants.

  As a result of the above fraudulent transactions, the so called Share/Membership Transfer and the Membership Acceptance Agreement are a nullity.

**May 2016**

- Defendants concealed from Plaintiffs that they assigned $250,000 of the $5,500,000 Deed of Trust on DDGC to Defendant Richard Bilos Medical Corporation.  Exhibit "R".

101.    The Defendants falsely, or with reckless disregard for the truth, intentionally made the following material false representations or omissions, among others, to the Plaintiffs, which they relied upon as Defendants intended, in connection with the sale of the securities described herein:

- Throughout their interaction, Defendants made material false statements to Plaintiffs regarding the capitalization and status of VLP Capital.

- The Individual Defendants falsely represented to the Plaintiffs that they were the partners of Plaintiffs, that the Plaintiffs could rely upon and trust the Defendants and that Defendants were acting in the best interest of the Plaintiffs.

- The Individual Defendants routinely and intentionally interchanged the names of Entity Defendants to confuse and defraud the Plaintiffs.

/ / /

102.     In furtherance of the Defendants' fraud described herein: (a) the Defendants pressured the Plaintiffs to invest their retirement funds, and made the false statements referenced herein to cause the same, knowing that such statements were false and the investments would leave the Plaintiff's destitute; (b) the Defendants, including upon information and belief Defendant O'Brien, hired and paid the legal fees of the Hewell Law Firm, which rendered the Legal Opinion (Exhibit "F"); (c) Defendants drafted every agreement attached hereto; and, (d) at all times, and as recently as June 2016, the Defendants falsely represented to the Plaintiffs that their loans were safe, secured by land, and would shortly be repaid.   In all events, Plaintiffs' demands for the return of their funds have been refused by the Defendants.

### J.     Required Investment Adviser Registration

103.     The Investment Advisers Act of 1940 (15 U.S.C. §80b-1 to 80b-21) defines an "Investment Adviser" as a person who, for compensation, engages in the business of advising others about securities.  15 U.S.C. §80b-2(a)(11).

104.     SEC Release IA 1092 states that registration as an Investment Adviser is required when the following three conditions are met: (1) if advice or analysis regarding securities is offered; (2) if the entity is "in the business" of giving such advice; and, (3) if the advice is provided for compensation.

105.     The Corporate Securities Law of 1968, California Corporations Code §25000, *et seq*., also defines an "Investment Adviser" as a person who, for compensation, engages in the business of advising others about securities.  California Corporations Code §25009.

106.     California Corporations Code §25230(a) provides: "It is unlawful for any investment adviser to conduct business as an investment adviser in this state unless the investment adviser has first applied for and secured from the commissioner a certificate, then in effect, authorizing the investment adviser to do so  . . .."

### K.    Required Broker-Dealer Registration

107.    Section 3 (a)(4)(A) of The Securities Exchange Act of 1934 defines a "broker" as any person engaged in the business of effecting transactions in securities for the account of others.  California Corporations Code §25210(b) provides that "[n]o person shall, on behalf of a broker-dealer . . . or on behalf of an issuer, effect any transaction in, or induce or attempt to induce the purchase or sale of, any security in this state unless that . . . agent ha[s] complied with any rules as the commissioner may adopt for the qualification and employment of those agents."

### L.    Defendants Promoted, Marketed and Sold Securities to Plaintiffs – Conducting Business as Unregistered Investment Advisers and Broker-Dealers

108.    At all relevant times, none of the Defendants: (1) held any registration or authorization to conduct business as Investment Adviser; nor, (2) was a licensed and registered broker-dealer.  Despite the absence of required securities registration and licensing, the Defendants promoted, marketed and sold securities to the Plaintiffs.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### Violation of §10(b)-5 of the Securities and Exchange Act of 1934 and
### California Corporations Code §25400, *et seq.*
(Against Defendants VLP Capital, Inc., VLP Capital, Inc., Nevada, VLP Capital, LLC, VLP Management, Ltd., Desert Dunes Management, LLC, DDGC Holdings, Ltd., DDGC Operations, Ltd., Desert Dunes Condos, LP, GMS Developments, LLC, Glen Brayshaw, Michael Nyhuis and Sean Runnels)

109.    Plaintiffs incorporate herein by reference the allegations set forth herein in their entirety.

110.    All material facts in connection with the offer or sale of investments or securities must be disclosed.  Section 10(b) of The Securities Exchange Act of 1934 Act and Rule 10b-5 promulgated thereunder, 15 U.S.C. §78j(b); 17 C.F.R. 240.10b-5, and California Corporations Code §25400, *et seq.*

/ / /

111.    In connection with the investments herein, Defendants affirmatively, knowingly and/or recklessly made untrue statements of material fact and affirmatively, knowingly and/or recklessly omitted to state material facts necessary in order to make statements made, in light of the circumstances under which they were made, not misleading.

112.    Defendants had no basis for the statements made to Plaintiffs.  Defendants knew or should have known that the statements were false.  Defendants intended that Plaintiffs rely on said misrepresentations, misleading statements and omissions.  Plaintiffs reasonably relied upon the statements made by Defendants.

113.    Defendants' actions violated, among other common law and statutes, Section 10(b) of The Securities Exchange Act of 1934 Act and Rule 10b-5 promulgated thereunder, 15 U.S.C. §78j(b); 17 C.F.R. 240.10b-5; and, California Corporations Code §25400, *et seq*.

114.    Plaintiffs have been damaged by the conduct of Defendants as set forth herein and are entitled to rescind such purchase and recover damages.

**SECOND CAUSE OF ACTION**
**<u>Fraud</u>**
(Against Defendants VLP Capital, Inc., VLP Capital, Inc., Nevada, VLP Capital, LLC, VLP Management, Ltd., Desert Dunes Management, LLC, DDGC Holdings, Ltd., DDGC Operations, Ltd., Desert Dunes Condos, LP, GMS Developments, LLC, Glen Brayshaw, Michael Nyhuis and Sean Runnels)

115.    Plaintiffs incorporate herein by reference the allegations set forth herein in their entirety.

116.    Defendants intentionally or with reckless disregard for the truth, made material misrepresentations, omitted to state material facts necessary to make the statements they made not misleading, and suppressed material facts, of which Plaintiffs had actual knowledge. Defendants had actual knowledge their misrepresentations and omissions were untrue when made and intended that Plaintiffs rely on the misrepresentations and omissions.  Plaintiffs reasonably relied on Defendants' misrepresentations and omissions.

117.    Plaintiffs have been damaged as a direct and proximate result of Defendants' conduct as set forth herein.

### THIRD CAUSE OF ACTION
### <u>Intentional Misrepresentation</u>

(Against Defendants VLP Capital, Inc., VLP Capital, Inc., Nevada, VLP Capital, LLC, VLP Management, Ltd., Desert Dunes Management, LLC, DDGC Holdings, Ltd., DDGC Operations, Ltd., Desert Dunes Condos, LP, GMS Developments, LLC, Glen Brayshaw, Michael Nyhuis and Sean Runnels)

118.    Plaintiffs incorporate herein by reference the allegations set forth herein in their entirety.

119.    Defendants made material misrepresentations to Plaintiffs, including, but not limited to misrepresenting to Plaintiffs that the investments were sound, successful and thriving, and Plaintiffs' funds invested with the Defendants would be secure.  In addition, Defendants falsely represented to  Plaintiffs, as an inducement to obtain Plaintiffs' funds, that Plaintiffs would at all times have access to their funds, funds were available or immediately available to repay them; and, upon their request, Defendants would immediately return the Plaintiffs' funds.

120.    Defendants made these representations knowing them to be false and further made these representations with the intent to deceive and defraud Plaintiffs and to induce them to act in reliance on these representations in the manner hereafter alleged, or with the expectation that they would so act.  The representations made by Defendants were in fact false and/or misleading.

121.    Plaintiffs, at the time these representations were made by Defendants, were ignorant of the falsity of these representations and believed them to be true. In reliance on these representations, Plaintiffs were induced to, and did rely upon the representations of Defendants to invest funds with Defendants as described herein. Plaintiffs' reliance on the representations of Defendants was justified.

/ / /

122.     As a proximate result of the fraudulent conduct of Defendants, Plaintiffs have been injured and suffered monetary damages as a result of Defendant's wrongful conduct.  The aforementioned conduct of Defendants was an intentional misrepresentation, deceit and concealment of material facts known to Defendants, and was done with the intention on the part of Defendants to cause Plaintiffs to loan funds to and/or invest with the Defendants, and was despicable conduct that subjected Plaintiffs to cruel and unjust hardship in conscious disregard of its rights, so as to justify an award of exemplary and punitive damages.

### FOURTH CAUSE OF ACTION
### Negligent Misrepresentation
(Against Defendants VLP Capital, Inc., VLP Capital, Inc., Nevada, VLP Capital, LLC, VLP Management, Ltd., Desert Dunes Management, LLC, DDGC Holdings, Ltd., DDGC Operations, Ltd., Desert Dunes Condos, LP, GMS Developments, LLC, Glen Brayshaw, Michael Nyhuis and Sean Runnels)

123.     Plaintiffs incorporate herein by reference the allegations set forth herein in their entirety.

124.     Defendants owed the Plaintiffs a duty to exercise reasonable care.  By virtue of the acts stated herein, Defendants breached their duty of reasonable care to the Plaintiffs and acted carelessly, negligently and /or recklessly so as to expose the Plaintiffs to an unreasonable risk of harm.  Defendants knew or in the exercise of reasonable care should have known their actions and omissions posed an unreasonable risk of harm of which the Plaintiffs were unaware.

125.     Defendants' failure to exercise reasonable care and breach of their duties owed to the Plaintiffs caused damage to the Plaintiffs, including severe emotional distress, as set forth below.  Had Defendants exercised reasonable care Plaintiffs would not have been damaged.

/ / /

/ / /

/ / /

/ / /

## FIFTH CAUSE OF ACTION
### Breach of Contract

(Against Defendants VLP Capital, Inc., VLP Capital, Inc., Nevada, VLP Capital, LLC, VLP Management, Ltd., Desert Dunes Management, LLC, DDGC Holdings, Ltd., DDGC Operations, Ltd., Desert Dunes Condos, LP, GMS Developments, LLC, Glen Brayshaw, Michael Nyhuis, Sean Runnels and Gene O'Brien, Esq.)

126.    Plaintiffs incorporate herein by reference the allegations set forth herein in their entirety.

127.    Plaintiffs and Defendants entered into Agreements described herein, true and correct copies of which are attached hereto and incorporated herein.  Plaintiffs fulfilled all of their obligations under the Agreements.  By their actions as set forth herein, Defendants breached the Agreements.  In particular, the Defendants never paid the Plaintiffs the promised interest payments, nor the principal, in connection with the December 2011 $200,000 loan; February 2012 $70,000 loan; June 2012 $150,000 loan; July 2012 $1,390,000 loan; March 2013 $200,000 loan; and, June 2013 $800,000.

128.    Plaintiffs have incurred damages as a proximate result of the actions of Defendants in the amount of approximately $2,810,000, as set forth herein.

## SIXTH CAUSE OF ACTION
### Breach of the Implied Covenant of Good Faith and Fair Dealing

(Against Defendants VLP Capital, Inc., VLP Capital, Inc., Nevada, VLP Capital, LLC, VLP Management, Ltd., Desert Dunes Management, LLC, DDGC Holdings, Ltd., DDGC Operations, Ltd., Desert Dunes Condos, LP, GMS Developments, LLC, Glen Brayshaw, Michael Nyhuis and Sean Runnels)

129.    Plaintiffs incorporate herein by reference the allegations set forth herein in their entirety.

130.    By the activities set forth in the foregoing paragraphs, Defendants breached their duty to deal fairly and in good faith with Plaintiffs.

131.    Plaintiffs have been damaged by the conduct of Defendants in the amount of approximately $2,810,000, as set forth herein.

## SEVENTH CAUSE OF ACTION
### Negligence

(Against Defendants VLP Capital, Inc., VLP Capital, Inc., Nevada, VLP Capital, LLC, VLP Management, Ltd., Desert Dunes Management, LLC, DDGC Holdings, Ltd., DDGC Operations, Ltd., Desert Dunes Condos, LP, GMS Developments, LLC, Glen Brayshaw, Michael Nyhuis and Sean Runnels)

132.    Plaintiffs incorporate herein by reference the allegations set forth herein in their entirety.

133.    Defendants owed Plaintiffs a duty to exercise reasonable care.

134.    By virtue of the acts complained of above, Defendants breached their duty of reasonable care to Plaintiffs and acted carelessly, negligently and/or recklessly, thereby exposing Plaintiffs to an unreasonable risk of harm.  Defendants knew or in the exercise of reasonable care should have known their actions and omissions posed an unreasonable risk of harm of which Plaintiffs were unaware.

135.    Defendants' failure to exercise reasonable care and breach of their respective duties owed to Plaintiffs caused damage to them.  Had Defendants exercised reasonable care, Plaintiffs would not have been damaged.

## EIGHTH CAUSE OF ACTION
### Conversion

(Against Defendants VLP Capital, Inc., VLP Capital, Inc., Nevada, VLP Capital, LLC, VLP Management, Ltd., Desert Dunes Management, LLC, DDGC Holdings, Ltd., DDGC Operations, Ltd., Desert Dunes Condos, LP, GMS Developments, LLC, Glen Brayshaw, Michael Nyhuis and Sean Runnels)

136.    Plaintiffs incorporate herein by reference the allegations set forth herein in their entirety.

137.    As a result of the previously alleged acts, Defendants have converted property of Plaintiffs to their own use and benefit.

138.    Plaintiffs have been damaged as a result of this conversion, as set forth herein.

/ / /

## NINTH CAUSE OF ACTION
### Professional Negligence
(Against Defendant Gene O'Brien, Esq.)

139.   Plaintiffs incorporate herein by reference the allegations set forth herein in their entirety.

140.   Defendant O'Brien represented Defendant VLP Capital as its legal counsel in connection with the transactions described herein, and by extension the Plaintiffs at the times they were the sole shareholders of Defendant VLP Capital.

141.   Defendant O'Brien owed Defendant VLP Capital, and by extension the Plaintiffs a duty of care.  Defendant O'Brien acted carelessly, negligently and/or recklessly, and breached that duty of care via errors and omissions below the standard of care for attorneys, thereby causing damage to VLP Capital, and by extension the Plaintiffs.

142.   Defendant O'Brien's failure to exercise reasonable care and breach of his duties owed to VLP Capital and the Plaintiffs caused damage to them.  Had Defendant O'Brien exercised reasonable care, VLP Capital and the Plaintiffs would not have been damaged.

## TENTH CAUSE OF ACTION
### Breach of Fiduciary Duty
(Against Defendants VLP Capital, Inc., VLP Capital, Inc., Nevada, VLP Capital, LLC, VLP Management, Ltd., Desert Dunes Management, LLC, DDGC Holdings, Ltd., DDGC Operations, Ltd., Desert Dunes Condos, LP, GMS Developments, LLC, Glen Brayshaw, Michael Nyhuis, Sean Runnels and Gene O'Brien, Esq.)

143.   Plaintiffs incorporate herein by reference the allegations set forth herein in their entirety.

144.   Pursuant to the July 4, 2012 agreement and transaction described herein, Plaintiffs became the sole shareholders of Defendant VLP Capital.  Plaintiffs were and remain presently the sole shareholders of Defendant VLP Capital.  As of August 1, 2013, Plaintiff Cathy Rollo became a member of the Board of Directors of Defendant VLP Capital.

/ / /

COMPLAINT FOR DAMAGES, DECLARATORY RELIEF AND INJUNCTIVE RELIEF

145.    The Individual Defendants were, at all relevant times, Board Members of each of the Entity Defendants, including Defendant VLP Capital and owed a fiduciary duty to Plaintiffs. As a result, among other things, the Individual Defendants were required to place Plaintiffs' interests as shareholders above their own interests and to exercise a duty of care and loyalty.

146.    In addition, as a result of Plaintiff Cathy Rollo's Board Membership, the other Individual Defendant Board Members owed Plaintiff Cathy Rollo a fiduciary duty.

147.    During the time Individual Defendants owed Plaintiffs a fiduciary obligation, without notice or disclosure to Plaintiffs, the Defendants engaged in multiple fraudulent transactions, self-dealing, numerous corporate acts without any disclosure to Plaintiffs, and engaged in a series of material misrepresentations and material omissions designed to steal Plaintiffs' funds and loot Defendant VLP Capital.

148.    These undisclosed transactions were between Defendant VLP Capital and the Individual Defendants who were individual members of the Board of Directors of Defendant VLP Capital. The Individual Defendant Board Members breached their duties of care and loyalty by using their position as Board Members to enrich themselves and defraud Defendant VLP Capital and Plaintiffs.

149.    The Individual Defendant Board Members entered into material contracts and material transactions with Defendant VLP Capital where they or corporations in which they held a material interest were parties and such contracts and transactions were not disclosed to Plaintiffs or any disinterested shareholders, and were never approved by any disinterested Board Members. Further, the transactions among Defendant VLP Capital and the Individual Defendant Board Members were not designed for any valid corporate purpose but solely to enrich the Board Members at the expense of the Plaintiffs and Defendant VLP Capital.

/ / /

150.     The transactions constituted self-dealing between Defendant VLP Capital and the Individual Defendant Board Members and were unfair to Defendant VLP Capital and the Plaintiffs.  The transactions are therefore void.

151.     As members of the Board of Directors of the Defendant VLP Capital, and the other Entity Defendants, Defendants Brayshaw, Runnels and Nyhuis acted in bad faith with a conscious and intentional disregard for their fiduciary duties and with an intent to harm the Plaintiffs.  The Individual Defendants knowingly and completely failed to undertake their responsibilities as Board Members of VLP Capital, and the other Entity Defendants.

152.     The Supreme Court held in *SEC v. Capital Gains Research Bureau, Inc.* (1963) 375 U.S. 180 that an investment adviser owes a fiduciary duty to its client by operation of law. Defendants owed Plaintiffs a duty to refrain from taking actions adverse to the interests of Plaintiffs, and making any misleading statements or omitting to state any material facts relevant to any securities or transactions recommended by Defendants.

153.     By the activities set forth herein, Defendants breached their fiduciary duties owed to Plaintiffs, and Plaintiffs have been damaged, as set forth herein.

### ELEVENTH CAUSE OF ACTION
### Negligent Infliction of Emotional Distress
(Against Defendants VLP Capital, Inc., VLP Capital, Inc., Nevada, VLP Capital, LLC, VLP Management, Ltd., Desert Dunes Management, LLC, DDGC Holdings, Ltd., DDGC Operations, Ltd., Desert Dunes Condos, LP, GMS Developments, LLC, Glen Brayshaw, Michael Nyhuis and Sean Runnels)

154.     Plaintiffs incorporate herein by reference the allegations set forth herein in their entirety.

155.     By virtue of their relationship to Plaintiffs, Defendants owed them a duty to exercise reasonable care.  Defendants' actions described herein constitute a breach of their duty to exercise reasonable care and were, at a minimum, grossly negligent.  Defendants' negligence directly caused Plaintiffs Cathy and Tony Rollo to suffer serious emotional distress.

156.     Plaintiffs Cathy and Tony Rollo have been damaged as a direct and proximate result of Defendants' conduct, as set forth herein.  Had Defendants acted with reasonable care, Plaintiffs Cathy and Tony Rollo would not have been damaged.

### TWELFTH CAUSE OF ACTION
### Unjust Enrichment
(Against Defendants VLP Capital, Inc., VLP Capital, Inc., Nevada, VLP Capital, LLC, VLP Management, Ltd., Desert Dunes Management, LLC, DDGC Holdings, Ltd., DDGC Operations, Ltd., Desert Dunes Condos, LP, GMS Developments, LLC, Glen Brayshaw, Michael Nyhuis and Sean Runnels)

157.     Plaintiffs incorporate herein by reference the allegations set forth herein in their entirety.

158.     A benefit was conferred on Defendants by Plaintiffs as set forth herein.  Among other things, Plaintiffs invested their life savings with the Defendants and loaned the Defendants the amount of at least $2,810,000, which enabled Defendant VLP Capital to purchase, among other things, the DDGC and the Pulte Land.  Plaintiffs' demands for the return of their funds have been refused by the Defendants, despite that at all times, and as recently as June 2016, the Defendants falsely represented to the Plaintiffs that their loans were safe, secured by land, and would shortly be repaid.

159.     In all events, the benefit conferred by Plaintiffs was received by Defendants, and it would inequitable for Defendants to retain those benefits without payment to Plaintiffs.

160.     Plaintiffs are entitled to damages as set forth herein.

### THIRTEENTH CAUSE OF ACTION
### Violation of 11 U.S.C. §§544 and 550 and California Civil Code §§3439.04(a) and 3439.05
### (Fraudulent Transfer)
(Against Defendants VLP Capital, Inc., VLP Capital, Inc., Nevada, VLP Capital, LLC, VLP Management, Ltd., Desert Dunes Management, LLC, DDGC Holdings, Ltd., DDGC Operations, Ltd., Desert Dunes Condos, LP, GMS Developments, LLC, Glen Brayshaw, Michael Nyhuis and Sean Runnels)

161.     Plaintiffs incorporate herein by reference the allegations set forth herein in their entirety.

162.     Plaintiffs owned one-hundred percent (100%) of the outstanding shares of Defendant VLP Capital.  Defendants transferred assets belonging to VLP Capital in the form of, among other things, interests in DDGC and the Pulte Land to, among others, Defendants the REIT, the Regional Center, CFIIC, AMAG, Inc., R2H, LLC, Richard Bilos Medical Corporation and GMS Developments, LLC, with knowledge that the assets were the valuable property of owned by Defendant VLP Capital.

163.     Plaintiffs are informed and believe that no consideration was paid, or inadequate consideration was paid, for those assets, thus constituting a fraudulent transfer and a fraud on creditors and potential creditors, including Plaintiffs, in violation of 11 U.S.C. §§544 and 550 and California Civil Code §§3439.04(a) and 3439.05, among other statutes and authority.

164.     By the Defendants' activities, Plaintiffs have been damaged, as set forth herein.

### FOURTEENTH CAUSE OF ACTION
### Violation of California Corporations Code §25110
### (Sale of Unqualified Securities)
(Against Defendants VLP Capital, Inc., VLP Capital, Inc., Nevada, VLP Capital, LLC, VLP Management, Ltd., Desert Dunes Management, LLC, DDGC Holdings, Ltd., DDGC Operations, Ltd., Desert Dunes Condos, LP, GMS Developments, LLC, Glen Brayshaw, Michael Nyhuis and Sean Runnels)

165.     Plaintiffs incorporate herein by reference the allegations set forth herein in their entirety.

166.     California Corporations Code §25110 provides in pertinent part: It is unlawful for any person to offer or sell in this state any security in an issuer transaction . . . unless such sale has been qualified under Section 25111, 25112, or 25113 . . . or unless such security or transaction is exempted or not subject to qualification under Chapter 1 (commencing with section 25100) of this part." The investments described herein offered and sold by Defendants constitute "securities" within the meaning of California Corporations Code §25019.

/ / /

167.    Defendants "offered and sold" the securities within the State of California within the meaning of California Corporations Code §§25008 and 25017.  The California Corporations Commissioner has not issued a permit or other form of qualification authorizing Defendants to offer and sell the subject securities in the State of California.  The offer and sale of the subject securities are not exempt from the requirement of qualification under California Corporations Code §25110.

168.    Plaintiffs have been damaged by the conduct of Defendants as set forth herein. Plaintiffs are entitled to rescind such purchase and recover damages.

### FIFTEENTH CAUSE OF ACTION
### Violation of California Corporations Code §§309 and 316
### (Breach of Fiduciary Duty)
(Against Defendants Glen Brayshaw, Michael Nyhuis and Sean Runnels)

169.    Plaintiffs incorporate herein by reference the allegations set forth herein in their entirety.

170.    The Individual Defendants were, at all relevant times, Board Members of each of the Entity Defendants, including Defendant VLP Capital, and thus owed fiduciary duties to Plaintiffs requiring the Individual Defendants to act in good faith, honestly, with loyalty and in a prudent manner as required by California Corporations Code §309, among other statutes.

171.    Among other duties owed to the Plaintiffs, the Individual Defendant Board Members owed Plaintiffs fiduciary duties not to approve any corporate action of the Entity Defendants, including Defendant VLP Capital, resulting in the distribution of assets in violation of California Corporations Code §309, 310, 315 and 500, *et seq.*

172.    During the time Individual Defendants owed Plaintiffs a fiduciary obligation, without notice or disclosure to Plaintiffs, the Defendants engaged in multiple fraudulent transactions, self-dealing, and numerous corporate acts without any disclosure to Plaintiffs designed to steal Plaintiffs' funds and loot Defendant VLP Capital.

173.    The Individual Defendant Board Members breached their duties of care and loyalty by using their position as Board Members to enrich themselves and defraud VLP Capital and Plaintiffs.

174.    As a proximate cause of the Individual Defendant Board Members' breach of their fiduciary duties, Plaintiffs have been damaged in the amounts described herein.

### SIXTEENTH CAUSE OF ACTION
**Violation of §202(a)(11) of The Investment Advisers Act of 1940 and California Corporations Code §25230**
**(Liability for Operating as an Unregistered Investment Adviser)**
(Against Defendants VLP Capital, Inc., VLP Capital, Inc., Nevada, VLP Capital, LLC, VLP Management, Ltd., Desert Dunes Management, LLC, DDGC Holdings, Ltd., DDGC Operations, Ltd., Desert Dunes Condos, LP, GMS Developments, LLC, Glen Brayshaw, Michael Nyhuis and Sean Runnels)

175.    Plaintiffs incorporate herein by reference the allegations set forth herein in their entirety.

176.    Section 202(a)(11) of The Investment Advisers Act of 1940, 15 U.S.C. §80b-2(a)(11), defines an Investment Adviser as "a person who, for compensation, engages in the business of advising others about securities."   SEC Release IA 1092 states that registration as an Investment Adviser is required when the following three conditions are met:  (1) if advice or analysis regarding securities is offered; (2) if the entity is "in the business" of giving such advice; and, (3) if the advice is provided for compensation.

177.    California Corporations Code §25009 defines an Investment Adviser as "any person who, for compensation, engages in the business of advising others, either directly or indirectly through publications or writings, as to the value of securities or as to the advisability of investing in, purchasing or selling securities, or who, for compensation and as a part of a regular business, publishes analyses or reports concerning securities."

/ / /

/ / /

178.    California Corporations Code §25230(a) provides: "It is unlawful for any investment adviser to conduct business as an investment adviser in this state unless the investment adviser has first applied for and secured from the commissioner a certificate, then in effect, authorizing the investment adviser to do so or unless the investment adviser is exempt by the provisions of Chapter 1 (commencing with Section 25200) of this part or unless the investment adviser is subject to Section 25230.1."  By their actions described herein, Defendants operated as unregistered Investment Advisers under both federal and California law.

179.    Plaintiffs have incurred damages as a proximate result of Defendants' actions, as set forth herein.

### SEVENTEENTH CAUSE OF ACTION
**Violation of 15 U.S.C. §78a, *et seq*. and California Corporations Code §25210**
**(Liability for Operating as an Unregistered Broker-Dealer)**
(Against Defendants VLP Capital, Inc., VLP Capital, Inc., Nevada, VLP Capital, LLC, VLP Management, Ltd., Desert Dunes Management, LLC, DDGC Holdings, Ltd., DDGC Operations, Ltd., Desert Dunes Condos, LP, GMS Developments, LLC, Glen Brayshaw, Michael Nyhuis and Sean Runnels)

180.    Plaintiffs incorporate herein by reference the allegations set forth herein in their entirety.

181.    Section 3 (a)(4)(A) of The 1934 Act defines a "broker" as any person engaged in the business of effecting transactions in securities for the account of others.  15 U.S.C. §78a, *et seq*.  California Corporations Code §25210(b) provides that "[n]o person shall, on behalf of a broker-dealer . . . or on behalf of an issuer, effect any transaction in, or induce or attempt to induce the purchase or sale of, any security in this state unless that . . . agent ha[s] complied with any rules as the commissioner may adopt for the qualification and employment of those agents."

182.    By their actions described herein, Defendants operated as unregistered Broker-Dealers.  At all relevant times, no Defendant held the required license to sell securities or was registered with the State of California, the SEC or FINRA.

183.    At all relevant times, no Individual Defendant held a Series 7 or Series 65 license, or maintained registration under the rules of the Financial Industry Regulatory Authority ("FINRA").  Defendants' conduct as described herein required them to be licensed as securities Broker-Dealers.  Defendants' unlicensed activities as a Broker-Dealer violate federal and California securities laws.

184.    Plaintiffs have incurred damages as a proximate result of Defendants' actions, as set forth herein.

### EIGHTEENTH CAUSE OF ACTION
### Violation of California Corporations Code §310
(Against Defendants VLP Capital, Inc., VLP Capital, Inc., Nevada, VLP Capital, LLC, VLP Management, Ltd., Desert Dunes Management, LLC, DDGC Holdings, Ltd., DDGC Operations, Ltd., Desert Dunes Condos, LP, GMS Developments, LLC, Glen Brayshaw, Michael Nyhuis and Sean Runnels)

185.    Plaintiffs incorporate herein by reference the allegations set forth herein in their entirety.

186.    Pursuant to the July 4, 2012 agreement and transaction described herein, Plaintiffs became the sole shareholders of Defendant VLP Capital.  Plaintiffs were and remain presently the sole shareholders of Defendant VLP Capital.

187.    During the time that the Plaintiffs were the sole shareholders of VLP Capital, the Defendants engaged in multiple fraudulent transactions, self-dealing, and numerous corporate acts without any disclosure to Plaintiffs or shareholder approval, each of which were intended by the Defendants to steal the Plaintiffs' funds and loot Defendant VLP Capital.

188.    Plaintiffs, as VLP Capital's sole shareholders, are entitled to void those fraudulent transactions and corporate acts pursuant to California Corporations Code §310, as those transactions were unreasonable and unfair to the Plaintiffs, and were not made in good faith.

189.    Plaintiffs have incurred damages as a proximate result of Defendants' actions, as set forth herein.

### NINETEENTH CAUSE OF ACTION
### 15 U.S.C. §78t(a) and California Corporations Code §25504
### (Control Person Liability)
(Against Defendants Glen Brayshaw, Michael Nyhuis, Sean Runnels)

190.   Plaintiffs incorporate herein by reference the allegations set forth herein in their entirety.

191.   All of the acts and omissions stated herein were undertaken by the Individual Defendants as control persons of the Entity Defendants, as that term is used in Section 20(a) of The 1934 Act, 15 U.S.C. §78t(a), and California Corporations Code §25504, among other statutes.

192.   The Individual Defendants are liable as control persons of the Entity Defendants, pursuant to Section 20(a) of the 1934 Act, 15 U.S.C. §78t(a), and California Corporations Code §25504, among other statutes, for the acts and omissions of the Entity Defendants, and consequent damage, as set forth herein.

### TWENTIETH CAUSE OF ACTION
### Accounting
(Against Defendants VLP Capital, Inc., VLP Capital, Inc., Nevada, VLP Capital, LLC, VLP Management, Ltd., Desert Dunes Management, LLC, DDGC Holdings, Ltd., DDGC Operations, Ltd., Desert Dunes Condos, LP, GMS Developments, LLC, Glen Brayshaw, Michael Nyhuis and Sean Runnels)

193.   Plaintiffs incorporate herein by reference the allegations set forth herein in their entirety.

194.   Plaintiffs are informed and believe that monies due and owing them by Defendants are unaccounted for or are missing.  The amounts owed are unknown to Plaintiffs and cannot be ascertained without an accounting by Defendants.  Plaintiffs do not have sufficient information to determine the amount owed.  Defendants have complete records and have refused to produce them.

/ / /

## TWENTY-FIRST CAUSE OF ACTION
### Declaratory Relief
(Against all Defendants)

195.    Plaintiffs incorporate herein by reference the allegations set forth herein in their entirety.

196.    An actual case or controversy exists between Defendants and Plaintiffs concerning title to real properties described herein, and Defendant VLP Capital, Inc.   Plaintiffs seek a determination of their right to title to the real properties described herein and Defendant VLP Capital, Inc.

## TWENTY-SECOND CAUSE OF ACTION
### Injunctive Relief
(Against all Defendants)

197.    Plaintiffs incorporate herein by reference the allegations set forth herein in their entirety.

198.    Defendants' wrongful conduct described herein, unless and until enjoined and restrained by Order of this Court, will cause great and irreparable injury to Plaintiffs, who will lose funds due to Defendants' improper and illegal acts.

199.    Plaintiffs have no adequate remedy at law for the injuries currently being suffered or that are threatened in that it will be impossible for Plaintiffs to determine the precise amount of damage that they will suffer if Defendants' conduct is not restrained.   Plaintiffs will continue to be damaged so long as Defendants' conduct continues and Defendants retain control over Plaintiffs' funds.

200.    An injunction is necessary preventing Defendants from taking any actions, such as selling, refinancing, encumbering or otherwise transferring title to or undertaking any action affecting title to the real properties described herein until a judicial declaration is made regarding title to those real properties described herein.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court award them the following relief, including, but not limited to:

1. A Judicial Determination that Plaintiffs are the sole shareholders of Defendant VLP Capital, Inc. as of July 4, 2012 and record holders of all real property held by VLP Capital, Inc. after July 4, 2012, including the DDGC real property and the Pulte Land (collectively, the "VLP Capital, Inc. Property");

2. Reimbursement with interest at the legal rate of ten-percent (10%) of all funds obtained by Defendants relating to any assets held by Defendant VLP Capital, Inc. after July 4, 2012, including but not limited to any amount received by Defendants relating to any transaction, encumbrance or deeds of trust thereon since July 4, 2012;

3. Injunctive Relief preventing Defendants from taking any actions, including selling, refinancing, encumbering or otherwise transferring title to or undertaking any action affecting title to VLP Capital, Inc. Property until a judicial declaration is made regarding title to those real properties;

4. An accounting of all assets of Defendant VLP Capital, Inc. after July 4, 2012;

5. Punitive damages, reasonable and necessary attorney's fees and costs of suit;

6. Declaratory Relief described herein;

7. A Constructive Trust over any interest in the VLP Capital, Inc. Property obtained by the following Defendants after July 4, 2012 (when the Plaintiffs became the sole shareholders of Defendant VLP Capital, Inc., then the record owner of the VLP Capital, Inc. Property):

   - Vanguard Leisure Properties Real Estate Investment Trust (the REIT)
   - California East Coast Regional Center, LLC, USCIS Regional Center (the Regional Center)
   - California Foreign Investment and Immigration Center, LLC (CFIIC)
   - AMAG, Inc.
   - R2H, LLC
   - Richard Bilos Medical Corporation

8. Such other and further relief as this Court deems just and proper.

Alternatively, Plaintiffs request that this Court award them the following relief:

1. Compensatory damages in the amount of $2,810,000;

/ / /

2.    A Judicial Determination that Plaintiffs are entitled to damages in the amount of the highest fair market aggregate value of the assets of Defendant VLP Capital, Inc. since July 4, 2012, including but not limited to the VLP Capital, Inc. Property;

3.    Reimbursement, with interest at the legal rate, of all funds obtained by Defendants relating to any assets held by Defendant VLP Capital, Inc., including but not limited to Defendant VLP Capital, Inc. Property as well as funds received by Defendants relating to any transaction, encumbrance or deeds of trust;

4.    Return of all funds advanced by Plaintiffs with interest thereon at the legal rate of ten-percent (10%);

5.    Punitive damages, reasonable and necessary attorney's fees and costs of suit;

6.    Injunctive Relief preventing Defendants from taking any actions, including selling, refinancing, encumbering or otherwise transferring title to or undertaking any action affecting title to VLP Capital, Inc. Property until a judicial declaration is made regarding title to those real properties;

7.    Declaratory described herein;

8.    Restitution;

9.    Rescission;

10.    A Constructive Trust over any interest in the VLP Capital, Inc. Property obtained by the following Defendants after July 4, 2012 (when the Plaintiffs became the sole shareholders of Defendant VLP Capital, Inc., then the record owner of the VLP Capital, Inc. Property):

- Vanguard Leisure Properties Real Estate Investment Trust (the REIT)
- California East Coast Regional Center, LLC, USCIS Regional Center (the Regional Center)
- California Foreign Investment and Immigration Center, LLC (CFIIC)
- AMAG, Inc.
- R2H, LLC
- Richard Bilos Medical Corporation

11.    An accounting for the assets of Defendant VLP Capital, Inc. as of and after July 4, 2012; and,

/ / /

/ / /

/ / /

12.    Such other and further relief as this Court deems just and proper.

Dated:  November 9, 2016                              BALDWIN MADER LAW GROUP

*By:* _____
        Patrick Baldwin, Esq.
        Christopher Mader, Esq.
        *Attorneys for Plaintiffs*